BROOM, Justice,
for the Court:
Shrimp taking pursuant to Ordinance 86 (0-86 herein) of the Mississippi Marine Conservation Commission is the salient feature of this case appealed from the Chancery Court of the Second Judicial District of Harrison County, Mississippi. 0-86 allowed bait fishermen to take from the waters certain shrimp along the Mississippi Gulf Coast. Under 0-86, these waters were not opened to other commercial fishermen; consequently, Mississippi Gulf Coast Fishermen’s Organization, Inc., a non-profit corporation of commercial fishermen (appellant herein), brought this injunction suit contending that 0-86 was invalid. After hearing testimony, the lower court (Chancellor Frank Alexander) denied the injunction, and found that 0-86 was a proper exercise of authority under Mississippi Code Annotated § 49-15-15(3)(k) (Supp.1979). We affirm.
Appellant contends: (1) the Commission exceeded its statutory authority in adopting 0-86 and two other ordinances; (2) the ordinances were not within the conservation mandates of state statutes because nursery areas for shrimp were permitted to be invaded; (3) appellant was denied its right of equal protection by the adoption and enforcement of these ordinances; and (4) appellant, in seeking to enforce the declared public policy of Mississippi Code Annotated § 49-15-1 (Supp.1979) and related sections, was entitled to attorney’s fees.
0-86 was passed at a special meeting of the Mississippi Marine Conservation Commission (Commission herein) on April 20, 1978; its practical effect was to allow no one but live bait fishermen to enter and take shrimp from our coastal waters North of Deer Island, North of a line from Grand Bayou on Deer Island as it runs to the Northeast to Marsh Point. Also, under 0-86, live bait fishermen were allowed to catch live bait in all areas North of the L & N Railroad as it runs through the coastal counties after July 1 of each year unless it was determined that 75% of the shrimp are smaller than 90 to 100 to the pound. At the time 0-86 was passed, Ordinances Nos. 59 and 63 (6-59 and 0-63 herein), which closed all areas one-half mile South of the Mississippi coastline to shrimping, excepting live bait captures, were in effect. On June 4, 1979, the Commission passed its order opening the 1979 shrimp season declaring the fishing grounds to be one-half mile from the shoreline of the three coastal counties. 0-59, 0-63 and the June 4, 1979 Order of the Commission in effect established a one-half mile staging area from the coastline and prohibited all shrimping therein except for 0-86. According to 0-86 live bait fishermen were authorized to catch shrimp within this one-half mile area which was not a part of the regular fishing grounds *759 annually open to other commercial fishermen each year in June. Under 0-86, a total of 4,900 commercial shrimping licenses and 33 live bait licenses have been issued.
WAS THE COMMISSION’S ACTION IN ADOPTING 0-86, 0-59, 0-63 AND THE ORDER OF JUNE 4, 1979, IN VIOLATION OF ITS STATUTORY AUTHORITY AS EXCEEDING CONSERVATION MANDATES AND PERMITTING NURSERY AREAS TO BE FISHED?
Live bait catchers are, as pointed out by appellant, recognized under Mississippi Code Annotated § 49-15-29(i) (Supp.1979). That section provides that the live bait catchers must purchase a license to operate, and then the statute provides:
Such shrimp may be taken in either the closed or open season . ...
The position taken by appellant is that the Commission may only license live bait catchers to take shrimp in an area where others may do so although this may be done in “either the closed or open season.” They say that the Commission has too broadly interpreted § 49-15-29(i) and exceeded the “leeway the Legislature intended to grant the live bait catchers.” Additionally, the appellant argues that the legislative grant was “for one of additional time; it was not one of additional space.” Further elaborating upon its argument, the appellant contends “the Legislature, in allowing for live bait catchers to take (shrimp) during open or closed seasons, did not go so far as to allow them to take from any area, but instead limited the grant to that area where the season was opened or closed.”
In passing upon the argument before us, we are mindful of Mississippi Code Annotated § 49-15-1 (1972) which states that:
[I]t is the intent of the legislature to provide a modern, sound, comprehensive and workable law to be administered by specialists, who are vested with full and ample authority to take such action as may be necessary in order to help protect, conserve and revitalize seafood life in the State of Mississippi. [Emphasis supplied].
The wording of the portion of the statute just quoted makes it clear that the legislature in giving consideration to aquatic life was aware that each of the species has its own peculiarities and that the lawmakers could not effectively deal with the shrimping and fishermen’s industry with a rigid set of statutory regulations. Accordingly the legislature, so as to provide for the management and regulation of the fishing and shrimping industry, vested the Commission with broad and extensive powers:
1. § 49-15-11(1) (Supp.1979). The Mississippi Marine Conservation Commission is hereby established and full power is vested in the commission to manage, control, supervise and direct any matters pertaining to all saltwater aquatic life not otherwise delegated to another agency. [Emphasis supplied].
2. § 49-15-15(1) (Supp.1979). The express purpose of this section is to furnish the commission with jurisdiction and authority over all marine aquatic life.
3. § 49-15-15(3) (Supp.1979). In connection with its jurisdiction and authority, the commission:
(b) shall open, close, and regulate fishing seasons for the taking of shrimp, oysters, fish .
(c) shall set size, catching and taking regulations for all types of seafood

In order to provide statutory authority to deal with and provide for the needs of the shrimping (fishing) industry, there was enacted into law Mississippi Code Annotated § 49 — 15-15(3)(k) (Supp.1979):
(The Commission) is authorized to enact all regulations necessary for the protection, conservation or propagation of all shrimp, . . . . However, it shall be unlawful for any person, firm or corporation to take, catch or have in their possession . . . shrimp of a size weighing in the raw state less than one (1) pound to each 68 shrimp . . . This provision may be changed by a two-thirds (%) vote of the commission. [Emphasis supplied].
*760 Appellant argues that the language of § 49-15-29(i), supra, permitting live bait fishermen to take shrimp in the closed or open season, precludes any other control by the Commission so as to allow live bait takers to operate where appellant may not. The statutory language is the following:
Such shrimp may be taken in either the closed or open season and may be sold only when alive or with the heads attached .
We do not agree with the appellant in its interpretation of this language. Analysis of the other statutory enactments referred to clearly establishes that the legislature had no intention to limit the Commission’s power according to the concept advanced here by appellant. Section 49-15-15(3)(b) gives the Commission the right to “. . . open, close and regulate,” and we cannot give the term “regulate” the narrow interpretation which appellant urges upon the Court.
“Regulate” is defined as:
(1) To govern or direct according to rule; to bring under the control of law or constituted authority; make regulations for or concerning.
(2) To reduce to order, method or uniformity.
(3) To fix the time, amount, degree, or rate of; to adjust so as to work accurately or regularly.
Webster’s Third New International Dictionary, page 1913.
Appellant urges that the statutes grant no authority to open areas outside the traditional shrimping grounds where shrimp are found in size to exceed 68 to the pound, or to allow the taking of shrimp in areas not otherwise opened or closed to other commercial fishermen. Section 49-15-15(3)(c) authorizes the Commission to “set size, catching and taking regulations for all types of seafood . . . .” We are unable to say that the ordinance under attack here sets forth powers in excess of those which the legislature intended for the Commission to exercise.
Another contention of the appellant is that 0-86 is not a conservation, protection, or propagation measure and therefore is outside the mandate of § 49-15-1 which vested in the Commission authority to “help protect, conserve and revitalize seafood life . .” A number of expert witnesses testified but their testimony was conflicting as to whether the action by the Commission would result in “conservation.” Our analysis of the expert testimony indicates that each of the expert witnesses understood and agreed that the highest and best use of the thing in controversy (shrimp) was an acceptable definition of “conservation.” Dr. Theodore Ford, Associate Director of the Louisiana Sea Grant College Program and Professor of Marine Sciences, testified:
Q. Dr. Ford, you were here yesterday, and I believe you heard the term, the definition used on several occasions, an acceptable definition of the term conservation as being the highest and best use of a resource. Do you agree with that as a definition?
A. That is a very acceptable definition.
Q. And have you read and studied Ordinance No. 86 of the Mississippi Marine Conservation Commission?
A. Yes, sir, I’ve reviewed it.
Q. Having reviewed that, what is your opinion as to whether or not that ordinance is consistent with the definition of the highest and best use of a resource?
A. I think it fits it very well because of two or three points; one, it provides for an orderly and reasonable and rational use of the resource.
Other experts presented different views on the subject.
The lower court observed the witnesses while they were upon the witness stand and agreed with the conclusion of the testimony offered by Dr. Ford and others on behalf of the Commission. In effect, the lower court found that the promulgation of 0-86 by the Commission was within its reasonable discretion and within the powers authorized by the legislature under § 49-15-15(3)(k), supra, permitting:
*761 [A]ll regulations necessary for the protection, conservation or propagation of all shrimp, oysters, commercial fish and crabs in the waters under the territorial jurisdiction of the State of Mississippi.
Said section also provides:
This provision (as to the 68 count) may be changed by a two-thirds (%) vote of the commission.
We hold that the finding of the lower court was made upon sufficient evidence and a proper interpretation of the statutes.
Appellant contends that the constitutional guarantee of equal protection under the Mississippi and United States Constitutions is denied it by the ordinances. The gist of the argument here is that “live bait shrimpers” are treated differently and with favor as contrasted with the treatment of the other commercial fishermen. The effect of the ordinances under attack is to allow any fisherman to take live shrimp for bait provided the fisherman properly adheres to applicable regulations which are set forth in considerable detail. “Live bait fishermen” must use small nets so as to reduce the number of shrimp caught; they may only drag for brief periods of time so as to keep the shrimp alive; they must have certain type tanks; and they must adhere to other regulations. A question arising from the record is: Why does the Commission permit persons shrimping for live bait to fish within the half-mile limit and North of bridges? Wallace Andrews, a live bait dealer for thirty-four (34) years, answered the question:
Well, if we had to go outside and get in rough water, the shrimp would be beat to death on the walls of the tank. .
We are unable to agree with appellant’s argument that 0-86 arbitrarily favors “live bait shrimpers” over the others because conservation, according to the record, is the obvious purpose of the ordinance. Substantial testimony accepted by the lower court established that the ordinance would result in making the highest and best use of the shrimp industry as a resource of the State of Mississippi. We find no arbitrary or unlawful discrimination in the promulgation of the ordinance or in its application. As stated, any fisherman, including any of the appellants, may operate as “live bait shrimpers” provided they follow the applicable regulations set forth by the ordinances and statutes.
Another proposition argued is that the appellant was entitled to an award of attorney’s fees. We find that this proposition and others which were argued lack merit.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.
PATTERSON, C. J., takes no part.